UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2026 FEB -6  P 3:52

BY [signature] CLERK
DEPUTY CLERK

KEREN SITA,  )
            )
   Plaintiff, )
            )
v.          )   Case No. 2:25-cv-239
            )
KURN HATTIN HOMES FOR CHILDREN, )
            )
   Defendant. )

# ENTRY ORDER
## ORDERING SERVICE OF PROCESS
(Doc. 8)

Plaintiff Keren Sita, representing herself, initially commenced this action against Kurn Hattin Homes for Children ("Kurn Hattin") alleging claims under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, et seq. ("Title IX"), Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, et seq. ("Title VI"), and state tort law. *See* Doc. 5.[1] Upon review under 28 U.S.C. § 1915(e)(2)(B), the Complaint was dismissed, and she was granted leave to file an Amended Complaint ("AC"). Plaintiff timely filed an AC naming Champlain Housing Trust as defendant in the case caption and realleging that Kurn Hattin placed her in an environment in which she was sexually endangered, harassed, and groomed while she was a minor student there and also failed to provide her a safe and nondiscriminatory educational environment. (Doc. 8.) The court proceeds to an initial review of the AC under 28 U.S.C. § 1915(e)(2)(B).

---

[1] Pursuant to the Federal Rules of Civil Procedure, the "complaint must name all the parties[.]" *See* Fed. R. Civ. P. 10(a). In light of Plaintiff's self-represented status and the singular reference to Champlain Housing Trust, the court construes the AC as brought against Kurn Hattin. The Clerk's Office is respectfully requested to correct the docket to remove Champlain Housing Trust as a named Defendant and to identify Kurn Hattin Homes for Children as a named Defendant.

I.   **Pertinent Procedural History.**

On April 11, 2024, Plaintiff applied for *in forma pauperis* ("IFP") status seeking to bring claims for violation of Title IX, negligence and negligent supervision, and intentional infliction of emotional distress ("IIED") against Kurn Hattin based on her experience as a student there. Plaintiff was granted IFP status and ordered to show cause why her Title IX claim should not be dismissed as time-barred and, if it was time-barred, why the court should exercise supplemental jurisdiction over her state law claims. *See Sita v. Kurn Hattin Homes for Children*, No. 24-cv-388, slip op. (Doc. 3) (D. Vt. Oct. 3, 2024). Plaintiff timely filed her declaration.

On February 14, 2025, the court determined that Plaintiff's declaration did not establish that equitable tolling, the discovery rule, or the Vermont childhood sexual abuse statute extended the time for Plaintiff to file a lawsuit under Title IX beyond the three-year period that generally applies to personal injury claims in Vermont. *Id.*, slip op. at 2 (Doc. 8) (D. Vt. Feb. 14, 2025). Accordingly, Plaintiff's Title IX claim was dismissed as untimely. The court declined to exercise supplemental jurisdiction over Plaintiff's state-law claims and dismissed the Complaint. The court did not grant leave to file an amended complaint, explaining that "better pleading cannot cure the untimeliness of Ms. Sita's Title IX claim[.]" *Id.* at 5. Plaintiff did not file an appeal.

Instead, one week later, on February 21, 2025, Plaintiff commenced this case and again requested IFP status. The proposed Complaint asserted nine causes of action: (1) violation of Title IX, (2) violation of Title VI, (3) "common law" negligence, (4) negligent supervision, (5) IIED, (6) negligent infliction of emotional distress, (7) breach of fiduciary duty, (8) negligence under Vermont law, and (9) violation of Title IX (deliberate indifference).

On May 23, 2025, the court issued an Entry Order granting Plaintiff IFP status, dismissing the Complaint, and granting leave to amend. The court stated: "Plaintiff may . . . amend her Complaint to assert factual allegations to support a claim of equitable tolling." (Doc. 5 at 7.) Plaintiff timely filed a proposed AC wherein she alleges equitable

2

tolling. Her AC, however, does not contain many of the factual allegations from her original complaint.

## II.     Allegations of the Proposed Amended Complaint.

In her proposed AC, Plaintiff identifies Champlain Housing Trust as the defendant in the case caption, but the AC's preamble states: "This is a civil indictment brought under federal civil rights law to hold Kurn Hattin Homes for Children accountable[.]" (Doc. 8 at 1.) In the section titled "Parties[,]" Plaintiff names "K[u]rn Hatt[i]n Hall, Inc." *Id.* at 3, ¶ 26.

Plaintiff asserts the court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 as well as jurisdiction under 28 U.S.C. § 1343 and may exercise supplemental jurisdiction over her related state law claims under 28 U.S.C. § 1367. She claims the District of Vermont is a proper venue "because a substantial part of the events and omissions giving rise to these claims occurred in the District of Vermont, including but not limited to conduct that occurred within Chittenden County and Burlington, Vermont." (Doc. 8 at 3, ¶ 24.) The court agrees that venue is proper.

Plaintiff alleges Kurn Hattin Hall, Inc. is a "Vermont-based corporate entity involved in the management, administration, or oversight of the educational institution or program at issue" in this case. *Id.* ¶ 26. Kurn Hattin Homes for Children is alleged to be a federally funded boarding school for vulnerable children in Westminster, Vermont. *Id.* at 1, ¶ 2; 5, ¶ 43. Plaintiff alleges that Kurn Hattin and its administrators, agents, and house parents were acting under color of state law by operating a licensed educational and residential institution regulated by the State of Vermont. *Id.* at 18, ¶ 208.

Plaintiff states that she suffered childhood sexual abuse prior to attending Kurn Hattin and that Kurn Hattin knew but concealed that there was "systemic sexual misconduct within its institution[,]" including "adult staff members engaging in inappropriate contact with minor boys, and patterns of children engaging in sexualized behavior[.]" *Id.* at 15, ¶¶ 170-71, 176; 16, ¶ 185. Plaintiff alleges she was "recruited [to Kurn Hattin] with assurances of academic excellence, a 'miniature Harvard,' a place where [her] potential would be honored." *Id.* at 1, ¶ 3. "Instead, [Plaintiff] was placed in

3

an environment where sexual harassment, racial targeting, and institutional neglect were allowed to thrive" and where she was "sexualized prematurely" and "groomed[.]" (Doc. 8 at 1, ¶ 3; 6, ¶ 56.) Plaintiff claims that although she was a sixth-grade girl, Kurn Hattin "placed her in a dormitory environment alongside eighth-grade girls, some of whom were socially dominant, psychologically unstable, or carrying their own histories of trauma" and where she was "exposed to adult themes" and to "covert sexual undercurrents." *Id.* at 5, ¶ 48; 11, ¶ 126; 21, ¶ 246. Plaintiff asserts Kurn Hattin "assumed a position of elevated responsibility, trust, and moral authority over [her] physical, emotional, educational, and psychological well-being." *Id.* at 7, ¶ 79. "Despite this sacred duty," Kurn Hattin is alleged to have "breached [its] fiduciary obligations by subjecting Plaintiff to sustained environments of emotional, psychological, and sexual endangerment; failing to protect her from older children with aggressive and harmful behaviors; failing to notify proper child welfare authorities of such harms; and actively obscuring the extent of the institutional abuse [she] endured." *Id.* ¶ 80.

Plaintiff asserts the following claims under state law: (1) breach of fiduciary duty, (2) negligence, (3) IIED, (4) unjust enrichment, (5) fraudulent concealment of Plaintiff's placement in housing that was "developmentally inappropriate and emotionally dangerous[,]" (6) civil conspiracy, (7) malicious institutional abuse, (8) fraudulent concealment of "systemic sexual misconduct[,]" and (9) failure to protect/willful indifference to known danger. Plaintiff also brings six claims under 42 U.S.C. § 1983, alleging that her substantive due process, equal protection, and additional Fourteenth Amendment rights were violated by being placed and forced to remain in a harmful and developmentally inappropriate housing environment where she was targeted by the adults in charge due to her race. She alleges these housing decisions were race-based and that she was treated less favorably than her similarly situated white peers by Kurn Hattin's staff.

It is unclear whether Plaintiff seeks to abandon or pursue her Title IX and Title VI claims. Although Plaintiff states generally that she "bring[s] this action in the spirit of a civil prosecutor[] pursuing public justice under Title IX, Title VI, and the common

4

law[,]" *id.* at 2, ¶ 13, the AC does not otherwise raise Title IX or Title VI claims. As the proposed AC supersedes Plaintiff's initial complaint, *see Hancock v. Cnty. of Rensselaer*, 882 F.3d 58, 63 (2d Cir. 2018) (noting "it is well settled that an amended pleading ordinarily supersedes the original and renders it of no legal effect") (brackets and internal quotation marks omitted), the allegations in the original complaint are not incorporated by reference. For this reason, although Plaintiff references Titles IX and VI, those claims are bereft of supporting factual allegations in the proposed AC. Under the *Iqbal/Twombly* plausibility standard, those claims therefore cannot proceed. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (A "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

As relief, Plaintiff seeks a declaratory judgment that Kurn Hattin violated her constitutional rights under the Fourteenth Amendment; compensatory and punitive damages; restitution and disgorgement of "any and all donations, grants, or public funds obtained through exploitative use of Plaintiff's image, voice, musical performances, or presence at the institution;" equitable and injunctive relief "including but not limited to mandated external oversight, transparent placement policies, reporting obligations, and protection protocols to prevent future constitutional violations against minor children in institutional care settings;" and "reasonable AI litigation costs and fees[.]" (Doc. 8 at 26-27.)[2]

### III.   Conclusions of Law and Analysis.

Under the IFP statute, the court is required to conduct an initial screening of the Complaint. The court must dismiss it if it determines that the action is "frivolous or malicious[,]" fails to state a claim on which relief can be granted, or seeks monetary relief "against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Although the court must read a self-represented plaintiff's complaint liberally and

---

[2] A self-represented party is not entitled to attorney's fees. *See Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684, 694 (2d Cir. 1998) ("a *pro se* plaintiff is not allowed to recover attorney's fees for representing herself"); *see also Kay v. Ehrler*, 499 U.S. 432, 435, 436-37 (1991) (holding that a *pro se* litigant is not entitled to attorney's fees under 42 U.S.C. § 1988).

construe it to raise the strongest arguments it suggests, *Harris v. Miller*, 818 F.3d 49, 56 (2d Cir. 2016) (per curiam), "[d]ismissals [under § 1915] are often made *sua sponte* prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).

In determining whether a complaint states a claim, the court must "accept as true all of the allegations contained in a complaint" and decide whether the complaint states a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. at 678; *see also* Fed. R. Civ. P. 8(a) (listing required contents of a pleading that states a claim for relief). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Self-represented litigants must satisfy the plausibility standard set forth in *Iqbal*. *See Costabile v. N.Y.C. Health & Hosps. Corp.*, 951 F.3d 77, 80-81 (2d Cir. 2020). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

If subject matter jurisdiction is lacking, the court cannot proceed further. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Federal courts "have an independent obligation to consider the presence or absence of subject[-]matter jurisdiction *sua sponte*." *Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Federal courts only have subject-matter jurisdiction over two types of cases: those raising a federal question or those invoking diversity jurisdiction. *See* 28 U.S.C. §§ 1331-32. "[T]he party asserting federal jurisdiction bears the burden of establishing jurisdiction" under one of these provisions. *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57 (2d Cir. 2006). "A plaintiff properly invokes § 1331 [federal question] jurisdiction when she pleads a colorable claim 'arising under' the Constitution or laws of the United States." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006). To raise a claim under diversity jurisdiction, § 1332 requires that the amount in controversy in the case exceeds

$75,000 and that the matter is "between . . . citizens of different States." 28 U.S.C. § 1332(a). Diversity means "complete diversity of citizenship"; in other words, the citizenship of each plaintiff must be different from the citizenship of each defendant. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

In this case, the AC may be considered by the court only if Plaintiff states a well-pleaded federal question because the parties are not diverse. *See Artis v. Dist. of Columbia*, 583 U.S. 71, 74 (2018) ("When district courts dismiss all claims independently qualifying for the exercise of federal jurisdiction, they ordinarily dismiss as well all related state claims."). At the pleading stage, Plaintiff has adequately alleged federal question jurisdiction because, interpreting the AC to raise the strongest arguments it suggests, Plaintiff has sufficiently pled constitutional claims under 42 U.S.C. § 1983 to advance past the screening stage.

### A.     Equitable Tolling.

Plaintiff was granted leave to amend the Complaint to assert a claim of equitable tolling with regard to her Title IX and Title VI claims. In the AC, Plaintiff asserted six new claims under 42 U.S.C. § 1983, all of which are subject to Vermont's three-year statute of limitations for personal injury actions. *See* 12 V.S.A. § 512(4); *Wallace v. Kato*, 549 U.S. 384, 387 (2007) ("Section 1983 provides a federal cause of action, but . . . the statute of limitations . . . is that which the State provides for personal-injury torts."). As each of Plaintiff's claims arises from the same material facts, if she adequately pleads equitable tolling, it will apply to her § 1983 claims and Title IX and Title VI claims as well.

Federal courts are obligated to apply a state's tolling provisions. *See Kane v. Mount Pleasant Cent. Sch. Dist.*, 80 F.4th 101, 109 (2d Cir. 2023). In Vermont, equitable tolling suspends a statute of limitations "when (1) the defendant actively misled the plaintiff or prevented the plaintiff in some extraordinary way from filing a timely lawsuit; or (2) the plaintiff timely raised the precise claim in the wrong forum." *Beecher v. Stratton Corp.*, 743 A.2d 1093, 1098 (Vt. 1999); *see also Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) ("Generally, a litigant seeking equitable tolling bears the burden of

establishing two elements: (1) that he [or she] has been pursuing his [or her] rights diligently, and (2) that some extraordinary circumstance stood in his [or her] way.").

Reading the AC liberally, because Plaintiff alleges she did not fully understand what had occurred to her until she was twenty-five, and that Kurn Hattin deliberately concealed and perpetuated a living and educational environment that it knew to be harmful while intentionally leading Plaintiff to believe that her distress was isolated and self-inflicted, although a close call, Plaintiff has plausibly alleged that her federal claims are subject to equitable tolling.

### B. Whether Plaintiff States a 42 U.S.C. § 1983 Claim.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Buon v. Spindler*, 65 F.4th 64, 78 (2d Cir. 2023) (internal quotation marks omitted). "The Supreme Court has explained that the purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (brackets and internal quotation marks omitted). For this reason, "constitutional torts are only actionable against state actors or private parties acting under the color of state law." *Betts v. Shearman*, 751 F.3d 78, 84 (2d Cir. 2014) (internal quotation marks omitted). Although it is unclear whether Kurn Hattin is a state actor for the purposes of § 1983, interpreting the AC to raise the strongest arguments it suggests, Plaintiff has pled state action sufficiently to move past the screening stage.

#### 1. Equal Protection.

The Fourteenth Amendment requires that the government treat all similarly situated people alike. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state a claim for a violation of the Equal Protection Clause, a plaintiff must plausibly allege "that he [or she] was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Phillips v. Girdich*, 408 F.3d 124, 129

anything she sends to the court. Failure to do so may result in dismissal of this case or other penalties. Anything filed with the court should specifically state that it has been sent to the lawyers for Defendant. Plaintiff should keep a true copy of everything she sends to Defendant or the court. The court is not ethically permitted to have communications with one party from which the other party is excluded.

Each party shall keep the court apprised of a current address at all times while the action is pending. A litigant is expected to monitor and respond to events in the litigation. Notice of any change of address must be filed promptly with the court and served on other parties.

Plaintiff has the opportunity to file a response to any motion filed by Defendant. In particular, in the event Kurn Hattin moves to dismiss the AC or files a motion for summary judgment, failure to respond may result in the dismissal of the case.

## CONCLUSION

For the reasons stated above, service of process shall be undertaken pursuant to 28 U.S.C. § 1915(d). The Clerk's Office, in cooperation with the U.S. Marshals Service, shall serve the AC on Defendant. *See* Fed. R. Civ. P. 4(c)(3); 28 U.S.C. § 1915(d). Plaintiff shall not be required to pay the fees for service of the AC. The Clerk's Office is respectfully requested to correct the docket to remove Champlain Housing Trust as a named Defendant and to identify Kurn Hattin Homes for Children as a named Defendant.

The rulings contained here are not an adjudication of the merits of any claim. The sole purpose is to screen the complaint to determine whether it may proceed further
SO ORDERED.

Dated at Burlington, in the District of Vermont, this 6th day of February, 2026.

Christina Reiss, Chief Judge
United States District Court